JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARACELY MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RSCR CALIFORNIA, INC., a Delaware Corporation; RES-CARE, INC., a Kentucky Corporation; RESCARE CALIFORNIA, INC., d/b/a RCCA SERVICES, a Delaware Corporation; NANCY CADIZ, an Individual; RITA NOVAK, an Individual; and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Case No.: CV 20-02470-CJC (RAOx)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 19] AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [Dkt. 12] |

**I.　INTRODUCTION & BACKGROUND**

On February 7, 2020, Plaintiff Aracely Martinez brought this case in Los Angeles County Superior Court against Defendants RSCR California, Inc., Res-Care, Inc., Res-Care California, Inc. d/b/a RCCA Services, Nancy Cadiz, and Rita Novak.  (Dkt. 1-1

[Complaint, hereinafter "Compl."].) Plaintiff asserts that she was wrongfully terminated from her nursing job at Defendants' long-term care facility for the developmentally disabled after twenty-three years of service. (*Id.* ¶¶ 1–3.) Plaintiff felt that Defendants' facility lacked adequate staffing to safely and properly attend to all patients' needs, so she often skipped lunch and other breaks to avoid falling behind on her duties, which included administering medications, feeding, and wound care. (*Id.* ¶ 15.) Cadiz, Plaintiff's former supervisor, and Novak, the facility's manager, required her to clock out as if she had taken a break anyway. (*Id.* ¶ 16.) She complained about understaffing, being forced to choose to either take a break (and risk patient safety) or work without breaks (yet still have to clock out), and other potentially unsanitary and unsafe conditions, but was told she must "turn the other way." (*Id.* ¶¶ 17–22.) Eventually, Plaintiff was terminated, and Plaintiff alleges her termination was in retaliation for her complaints. (*Id.* ¶ 23.) On March 13, 2020, Defendants removed Plaintiff's case to this Court, invoking diversity jurisdiction. (Dkt. 1 [Notice of Removal, hereinafter "NOR"].)

The parties in this case are not completely diverse. Like Plaintiff, the individual defendants are citizens of California. (*See* Compl. ¶¶ 8, 12–13.) The corporate defendants are citizens of Delaware and Kentucky. (NOR ¶¶ 19–23.) Defendants assert that the individual defendants were fraudulently joined and that their citizenship should be ignored for purposes of assessing diversity jurisdiction. (NOR ¶¶ 24–25.)

Before the Court are two related motions: Defendants' motion to dismiss the claims against the individual defendants (Dkt. 12) and Plaintiff's motion to remand (Dkt. 19). For the following reasons, Plaintiffs' motion to remand is **GRANTED** and Defendants' motion to dismiss is **DENIED AS MOOT**.[1]

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 11, 2020 at 1:30 p.m. is hereby vacated and off calendar.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). A civil action brought in state court, but over which a federal court may exercise original jurisdiction, may be removed by the defendant to a federal district court. 28 U.S.C. § 1441(a). By statute, federal courts have diversity jurisdiction over suits where more than $75,000 is in controversy if the citizenship of each plaintiff is different from that of each defendant. 28 U.S.C. § 1332(a). The burden of establishing subject matter jurisdiction falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Indeed, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* If at any time before final judgment, the court determines that it lacks subject matter jurisdiction, the action shall be remanded to state court. 28 U.S.C. § 1447(c).

Although diversity jurisdiction requires complete diversity of citizenship, there is an exception to that requirement "where a non-diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). "Joinder is fraudulent 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (quoting *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)). Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id.* at 1044.

//

## III. ANALYSIS

Plaintiff asserts two claims against the individual defendants: intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). Defendants argue that the individual defendants were fraudulently joined and that these claims cannot possibly survive for three reasons: (1) Plaintiff's IIED and NIED claims are preempted by California Workers' Compensation Act (the "WCA"), (2) Plaintiff's claims against the individual defendants are impermissibly based on personnel management decisions, and (3) Plaintiff fails to allege extreme or outrageous conduct. The Court disagrees.

### 1. WCA Preemption

Defendants first argue that Plaintiff's IIED and NIED claims are preempted by the WCA. (NOR ¶ 25.a.; Dkt. 23 [Defendants' Opposition to Plaintiff's Motion to Remand, hereinafter "Opp."] at 5–10.) With a few exceptions not relevant here, the WCA is the "exclusive remedy" for employee actions alleging injuries "against any other employee of the employer acting within the scope of his or her employment[.]" Cal. Lab. Code § 3601(a). This includes emotional injuries. *See Livitsanos v. Superior Court*, 2 Cal. 4th 744, 753 (1992) ("[C]ompensable injuries [under the WCA] may be physical, emotional or both, so long as they are disabling."). Accordingly, "claims for emotional distress caused by the employer's conduct causing distress such as discharge, demotion, discipline or criticism" are generally "preempted by the [WCA], even when the employer's acts causing the distress are intentional or outrageous." *De Peralta v. Fox Rest. Concepts, LLC*, 2018 WL 748287, at *3 (C.D. Cal. Feb. 6, 2018) (quoting *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013)); *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) ("[E]motional injuries sustained

in the course of employment are preempted by the workers' compensation scheme and generally will not support an independent cause of action.").

However, there are exceptions to WCA preemption for "conduct that contravenes fundamental public policy" and that "exceeds the risks inherent in the employment relationship." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008) (quoting *Livitsanos*, 2 Cal. 4th at 754).  There is "no bright line test" for "determining what behavior is part of the employment relationship or reasonably encompassed within the compensation bargain," and what is "so far out of the normal risks of the employment relationship as to be beyond the reach of Workers' Compensation." *Ledezma v. Walmart Inc.*, 2018 WL 6830492, at *3 (C.D. Cal. Dec. 21, 2018).  However, there is a "longstanding view that unlawful . . . retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such . . . retaliation are not subject to workers' compensation exclusivity." *Light v. Dept. of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).

A plaintiff need not perfectly allege a claim that falls outside WCA preemption in order to avoid a finding of fraudulent joinder.  Indeed, courts in this district have given significant leeway to plaintiffs whose pleadings did not explicitly tie their emotional distress claim to conduct beyond the normal employment relationship where the courts concluded it was possible that the plaintiffs could amend their pleadings to make that connection.  *See, e.g.*, *Hassler v. Talbots, Inc.*, 2019 WL 4221390, at *3 (C.D. Cal. Sept. 5, 2019) (rejecting fraudulent joinder argument based on WCA preemption because "it is *possible* for Hassler to state a claim for IIED against [the nondiverse defendant] that survives WCA preemption so long as she alleges discriminatory conduct which goes beyond the normal employment relationship") (emphasis in original); *Ledezma v. Walmart Inc.*, 2018 WL 6830492, at *4 (C.D. Cal. Dec. 21, 2018) (similar); *Golda v. Residence Inn by Marriott, LLC*, 2019 WL 102375, at *3 (C.D. Cal. Jan. 4, 2019)

(rejecting fraudulent joinder argument and remanding where the plaintiff failed to "explicitly tie his IIED claim to retaliation," but "[i]f pled more carefully in a subsequent amended complaint, these theories could possibly support a cause of action for IIED that falls outside the normal employment relationship, and therefore outside of WCA preemption"); *Paleg v. Kmart Corp.*, 2017 WL 2974923, at *3 (C.D. Cal. July 11, 2017) (remanding and concluding on this issue that "there is a non-fanciful possibility that Plaintiff's IIED claim against [the nondiverse defendant] is not barred by the WCA" because "there is still a possibility Plaintiff will be able to establish" that his termination was due to age discrimination).

Plaintiff alleges that she was retaliated against for complaining about understaffing, the requirement that she clock out for meal and rest breaks even if she did not take them, and other unsafe and unsanitary practices at Defendants' facility. (Compl. ¶¶ 3, 15–23.) Plaintiff further alleges that she suffered "severe emotional distress, humiliation, embarrassment, loss of self-esteem, loss of enjoyment of life and activities, mental and emotional distress and anxiety." (*Id.* ¶ 52.) Although she does not connect these allegations, there is a "non-fanciful possibility" that Plaintiff could amend her complaint to show that the emotional distress she suffered was due to retaliatory conduct outside the normal employment relationship. *See Golda*, 2019 WL 102375, at *3; *Paleg v. Kmart Corp.*, 2017 WL 2974923, at *3; *De Peralta v. Fox Rest. Concepts, LLC*, 2018 WL 748287, at *4 (C.D. Cal. Feb. 6, 2018) (rejecting fraudulent joinder argument based on WCA preemption because assertions that Plaintiff was terminated because of an injury were "sufficient to remove the IIED claim from the WCA's preemptive effect because they imply disability discrimination"); *Walker v. Avis Rent A Car Sys., LLC*, 2015 WL 13752943, at *6 (C.D. Cal. July 6, 2015) (rejecting fraudulent joinder and remanding after concluding that "[b]ecause Plaintiff's IIED claim is based on the conduct that arose from alleged illegal disability discrimination, it is not preempted by the WCA"); *Barsell v. Urban Outfitters, Inc.*, 2009 WL 1916495, at *4 (C.D. Cal. July 1, 2009) ("Because

this claim is based on allegations of disability discrimination, there is a non-fanciful possibility that the workers' compensation exclusivity provisions do not bar Barsell's claim against [her manager].")

### 2. Personnel Management Actions

Defendants argue that "[e]ven if Plaintiff could overcome the fatal impact of workers' compensation exclusivity, all of Plaintiff's allegations against the Individual Defendants in the Complaint suffer an additional, fatal flaw—they are based on mere personnel management decisions that do not support claims for IIED or NIED." (Opp. at 10; *see* NOR ¶ 25.b.) IIED claims based on personnel management decisions—even where those decisions are based on improper motivation—are also barred by WCA preemption. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").

As with WCA preemption based on exclusisivity, however, "a manager's actions going beyond normal personnel management decisions can give rise to IIED claims." *Golda*, 2019 WL 102375, at *4. For the same reasons described in the preceding section, then, the Court cannot conclude that Plaintiff could not amend her complaint to plausibly allege that the individual defendants' actions were retaliatory and therefore beyond normal personnel management decisions. *See, e.g.*, *id.* (rejecting application of this doctrine because "Plaintiff would likely be given the chance to amend the Complaint to more plainly allege that he was terminated in retaliation for his decision to take leave to care for his ailing father" which "potentially would bring Mejia's actions outside the normal course of employment"); *Hassler*, 2019 WL 4221390, at *4 (remanding despite

conclusion that "Hassler's FAC, as it currently appears, contains insufficient facts to plausibly allege that Gomez took any egregious steps outside of her role as Talbots' regional loss prevention manager," because there was a possibility that the plaintiff could amend the complaint to contain sufficient facts).

### 3. Extreme and Outrageous Conduct

To state a claim for IIED, a plaintiff must show that (1) the defendant subjected him to extreme and outrageous conduct; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 59, 593 (1979). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989).

Defendants argue that Plaintiff fails to state a plausible claim for IIED because plaintiff fails to sufficiently allege that the individual defendants engaged in extreme or outrageous conduct. (Opp. at 13.) But even if this is true, it is possible that Plaintiff could cure any insufficiencies in her complaint through amendment—a possibility that has led courts to remand similar cases. *See, e.g.*, *De Peralta*, 2018 WL 748287, at *5 (internal quotations omitted). Indeed, "in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appeared relatively weak." *Id.* (citing *Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)). "[I]f there is *any* possibility that the state law might impose liability on a resident defendant under the

circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Hunter*, 582 F.3d at 1043.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion, and **REMANDS** this case to Los Angeles County Superior Court.  Defendants' motion to dismiss is **DENIED AS MOOT.**

DATED:	May 6, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE